UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUDSON DE SOUZA AREDES, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Civil Action No. 1: 22-cv-10666-IT |
| | * |
| GESSICA APARECIDA PEREIRA AREDES, | * |
| | * |
| Respondent. | * |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

June 22, 2022

TALWANI, D.J.

## I.  Introduction

Petitioner Hudson de Souza Aredes brought this action against his spouse, Respondent Gessica Aparecida Pereira Aredes, pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("the Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, et seq. See Verified Compl. ¶¶ 1.1, 1.3 [Doc. No. 1]. In the Verified Complaint [Doc. No. 1], Hudson Aredes asserts that Gessica Aredes unlawfully removed their child, identified as M.P.A., from Brazil and is residing with the child in Massachusetts. Hudson Aredes seeks the return of the child to Brazil, as well as costs, fees, and expenses.[1] Verified Compl. ¶¶ 9.1-9.9. Gessica Aredes, appearing *pro se*, has orally opposed the requested relief.

---

[1] The verified complaint also seeks that Gessica Aredes deliver custody of the child, along with the child's Brazilian passport, to Hudson Aredes, and an order preventing Gessica Aredes from applying for any United States or Brazilian passports for the child. Verified Compl. ¶ 9.4 [Doc. No.1].

## II.  Procedural History

On May 4, 2022, Hudson Aredes filed his Verified Complaint [Doc. No. 1], a Motion for Preliminary Restraining Orders ("Motion") [Doc. No. 3], and supporting documents. The same day, the court held an *ex-parte* hearing by video conference and issued a temporary restraining order restraining Gessica Aredes from removing the child from Massachusetts pending further order of the court and setting a further hearing to determine whether the temporary restraining order should be continued following notice to Gessica Aredes and to address the remaining issues raised in Hudson Aredes's Motion. See T.R.O. [Doc. No. 9]. Id.[2]

The court held a video conference hearing on May 17, 2022, at which Gessica Aredes did not appear. Following the May 17, 2022 hearing, the court ordered, inter alia, that: (1) the Temporary Restraining Order [Doc. No. 9] remain in effect pending further order from the court and (2) Gessica Aredes file her response to the Verified Complaint [Doc. No. 1] no later than May 26, 2022. Order [Doc. No. 13]. The court set an evidentiary hearing on the Motion for June 3, 2022.[3]

Gessica Aredes did not file (and to date still has not filed) a response to the Verified Complaint [Doc. No. 1].

---

[2] The court also ordered that Petitioner promptly serve a copy of the May 4, 2022 Order [Doc. No. 9] and the Clerk's Notice of Hearing on Respondent. See T.R.O. [Doc. No. 9]. On May 5, 2022, Petitioner filed an Affidavit of Service [Doc. No. 11] attesting to service of the Verified Complaint and summons, the court's order, the notice of hearing and other documents.

[3] The court also ordered Petitioner to promptly serve Respondent with a copy of the May 18, 2022 Order [Doc. No. 13] and the Clerk's Notice of Hearing. On May 19, 2022, Petitioner filed an Affidavit of Service [Doc. No. 14].

On June 1, 2022, Hudson Aredes filed his Affidavit [Doc. No. 15] with an exhibit attached and the Affidavit of Wellington Aredes [Doc. No. 16] in further support of the Motion. On June 3, 2022, the evidentiary hearing commenced by video conference without an appearance by Gessica Aredes. Hudson Aredes presented the Affidavits and documents attached to the Verified Complaint [Doc. No. 1], including the child's birth certificate from Brazil, [Doc. No. 1-9], the child's Brazilian passport, [Doc. No. 1-11], the child's enrollment in a Brazilian school, [Doc. No. 1-12], and the child's medical records from Brazil [Doc. No. 1-13]. Hudson Aredes's counsel examined both Affiants under oath, to show that (1) the child was born and habitually resided in Brazil prior to removal; (2) Hudson Aredes has legal custody rights of the child; (3) Hudson Aredes was exercising those rights; (4) no divorce proceedings have been initiated between him and Gessica Aredes in Brazil (although they have separated); and (5) the child has regularly lived with him for part of each week prior to her removal. See Hudson Aff. ¶¶ 2, 4-5 [Doc. No. 15]. Based on this evidence and the law set forth below, the court found that Hudson Aredes had presented sufficient evidence for the court to issue a preliminary injunction.

Subsequent to the court making these findings on the record, Gessica Aredes appeared by video conference at the hearing but without counsel. Gessica Aredes stated that the child's passport had been handed over to United States border patrol officers and that she did not have the passport in her possession. Gessica Aredes did not otherwise object to the terms of the preliminary injunction order while she sought to retain counsel. The court extended the restraining order, see Preliminary Injunction Order [Doc. No. 19], and set a further evidentiary hearing for June 17, 2022, to allow Gessica Aredes to obtain counsel.

On June 17, 2022, both Hudson Aredes and Gessica Aredes appeared before the court by video conference. Hudson Aredes presented Affidavit of Hudson de Souza Aredes ¶ 6 [Doc. No.

3

21] and attached photographs. Hudson Aredes's counsel examined Hudson Aredes and Affiant Wellington Aredes under oath as to the child's residence in Brazil, Hudson Aredes's involvement in the child's everyday activities including schooling and care, and the absence of any domestic violence by Hudson Aredes against Gessica Aredes or the child.

Appearing pro se, Gessica Aredes opposed the child's immediate return to Brazil. Through a neutral interpreter [Doc. No. 22], Gessica Aredes cross-examined Hudson Aredes regarding his care for the child and his alleged substance use. Gessica Aredes testified under oath as to her fear for her own and the child's safety if forced to return to Brazil, and her belief that that the return of the child to Hudson Aredes in Brazil would expose the child to physical and/or psychological harm or otherwise place the child in an intolerable situation. Hudson Aredes's counsel briefly cross-examined Gessica Aredes. Gessica Aredes and the court elicited testimony from four witnesses for Gessica Aredes: Raximila Xavier, Josimara Silva, Marlene Pereira, and Geisandro Pereira. The witnesses testified under oath regarding Hudson Aredes's fitness as a father to the child, including his general demeanor and disciplinary methods towards the child. Hudson Aredes's counsel cross-examined the witnesses.

### III.   Legal Standard

The Hague Convention aims to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Convention pmbl. The stated objects of the Convention are twofold: "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention art. 1. A decision under the convention concerning

the return of the child "shall not be taken to be a determination on the merits of any custody issue." Convention art. 5(a). The court, thus, has jurisdiction to decide the merits of the wrongful removal claim, but may not decide the merits of the underlying custody dispute. Kufner v. Kufner, 519 F.3d 33, 38 (1st Cir. 2008) (citing Whallon v. Lynn, 230 F.3d 450, 455 (1st Cir. 2000)). Instead, the Convention "is generally intended to restore the pre-removal status quo and to discourage a parent from engaging in international forum shopping." Id.; see also Baxter v. Baxter, 423 F.3d 363, 367 (3d. Cir. 2005) ("[T]he Convention's procedures are designed to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases. The Convention is not designed to settle international custody disputes, but rather to ensure that cases are heard in the proper court").

"A petitioner seeking the return of a child under the [Hague] Convention [on the Civil Aspects of International Child Abduction] must establish the child's wrongful removal by a preponderance of the evidence." Mendez v. May, 778 F.3d 337, 343 (1st Cir. 2015) (quoting 22 U.S.C. § 9003(e)(1)(A)). "The petitioner must show that he or she (1) seeks to return the child to the child's country of habitual residence, (2) had custody rights immediately prior to the child's removal, and (3) was exercising those rights." Id. (citing Convention, art. 3). "If these three elements are met, and the petitioner has commenced judicial or administrative proceedings within one year of the date of wrongful removal, the Convention commands that the court reviewing the petition 'shall order the return of the child forthwith.'" Id. (quoting Convention, art. 12).

"The respondent may counter the presumption of return by establishing the application of one or more of the exceptions or defenses to return enumerated in Articles 12, 13, and 20 of the

Convention." Id. (citing 22 U.S.C. § 9003(e)(2)). "[A] respondent who opposes the return of the child has the burden of establishing--(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and (B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies." 22 U.S.C. § 9003(e)(2). If the removal was wrongful, the court must order the child's return barring the success of any affirmative defenses.

### IV. Wrongful Removal of the Child

#### A. Findings of Fact

The court finds the following facts based on witness testimony (including the court's credibility determinations where material testimony conflicted), and the parties' stipulations and exhibits as cited herein.

1. Hudson de Souza Aredes was born and grew up in Brazil, and is a citizen of Brazil. He is 35 years old and works as a farmer and painter in Brazil.
2. Gessica Aparecida Pereira Aredes was born and grew up in Brazil, and is a citizen of Brazil. She is 29 years old and worked as a social worker in Brazil. Verified Compl. ¶ 4.1.
3. Hudson Aredes and Gessica Aredes were married on or about October 24, 2011, in Brazil. See Marriage Certificate [Doc. 1-10].
4. In 2016, Hudson Aredes and Gessica Aredes had a daughter, M.P.A. Both Hudson Aredes and Gessica Aredes are listed on the child's birth certificate [Doc. No. 1-9]. The child was born in and is a citizen of Brazil.
5. In November 2021, Hudson Aredes and Gessica Aredes separated but remained legally married and continued to share legal custody of the child.

6. After November 2021, Gessica Aredes lived with her mother, Marlene Pereira. Hudson Aredes and Gessica Aredes each spent independent time with the child. Hudson Aredes saw the child three to four times a week, and the child spent the remaining time at school and at her grandmother's house. Further Hudson Aff. ¶ 3 [Doc. No 21].

7. After November 2021, the parties opened a joint bank account to fund the child's needs. Further Hudson Aff. ¶ 5 [Doc. No. 21]. Neither Hudson Aredes nor Gessica Aredes paid each other child support. Id.

8. The child attended school in Brazil. See School Enrollment [Doc. No. 1-12]. Hudson Aredes and Gessica Aredes took turns taking the child to and from school. Gessica Aredes attended school activities. Further Hudson Aff. ¶ 4 [Doc. No 21].

9. The child received her medical care in Brazil. See Medical Records [Doc. No. 1-13]. Both Hudson Aredes and Gessica Aredes were involved in the child's medical care.

10. On March 4, 2022, Gessica Aredes represented to Hudson Aredes that she was traveling to Brasilia-DF with the child to obtain a visitor visa to travel to Disney World in Florida, U.S.A. Hudson Aredes consented to Gessica Aredes's application for a visitor visa to allow the child to vacation to Disney World.

11. On March 4, 2022, Gessica Aredes traveled by airplane from Brazil to Mexico with the child. At some time thereafter, Gessica Aredes crossed the Mexico-United States border with her daughter without documentation. In the United States, she turned herself in to United States Border Patrol officers. Gessica

      Aredes and the child are currently living with Gessica Aredes's father, the child's grandfather, in Medford, Massachusetts. Verified Compl. at ¶ 1.5.

12. On March 10, 2022, Hudson Aredes filed a petition in Brazil for the return of the child under article 8 of the Convention. See Brazilian Petition [Doc. No 1-7].

13. On May 4, 2022, Hudson Aredes commenced this action.

    **B. Conclusions of Law**

The removal of a child is considered wrongful under the Convention where: (1) "it is in breach of rights of custody attributed to a person…under the law of the State in which the child was habitually resident immediately before the removal" and (2) "at the time of removal…those rights [of custody] were actually exercised…or would have been so exercised but for the removal..." Convention art. 3. Here, the court finds that Hudson Aredes has demonstrated that the child was wrongfully removed from Brazil.

First, Hudson Aredes has demonstrated that Brazil is the country of the child's habitual residence. See Convention art. 3. The child is a citizen of Brazil and has lived in Brazil until her removal in March 2022. She attended school in Brazil [Doc. No. 1-12] and received her medical care in Brazil [Doc. No. 1-13]. She has been issued a Brazilian passport [Doc. No. 1-11]. Based on these facts, the court finds that Hudson Aredes has demonstrated by a preponderance of the evidence that the child's country of habitual residence is Brazil.

Second, Hudson Aredes has demonstrated that he had custody rights immediately prior to the child's removal to the United States. See Convention art. 3. Rights of custody "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." Convention art. 3. Under the Convention, "rights of custody" are defined to "include rights relating to the care of the person of

the child and, in particular, the right to determine the child's place of residence." Convention art. 5(a). "Rights of access," in contrast, are defined under the Convention as "the right to take a child for a limited period of time to a place other than the child's habitual residence." Id. "Having rights of custody is necessary to petition for return of a child, while having only rights of access does not entitle a party to petition for the return of a child to the place of habitual residence." Kufner v. Kufner, 519 F.3d 33, 39 (1st Cir. 2008); see also Abbott v. Abbott, 560 U.S. 1, 9 (2010) ("The Convention also recognizes 'rights of access,' but offers no return remedy for a breach of those rights" (citing Convention arts. 5(b), 21)).

The court finds that, at the time of the removal, Hudson Aredes maintained custody rights over the child. Although there were no Brazilian judicial proceedings reflecting a custody arrangement after the parties' separation in November 2021, Hudson Aredes was entitled to custody rights by nature of patronage and the ongoing marriage to Gessica Aredes.

Third, Hudson Aredes has sufficiently demonstrated that he was exercising those custody rights but for the child's removal. Prior to the removal, Gessica Aredes and her mother were the primary caretakers of the child. However, exercise of custody rights need not be equal. Here, the parties had an ad hoc arrangement for care of the child after the separation, and there is a preponderance of evidence that the child spent time in both Hudson Aredes's and Gessica Aredes's care. Both parents contributed to the child's upkeep, including maintaining the child's education and vaccination regimen. At the time of the removal, Hudson Aredes consented to allow Gessica Aredes to seek a travel visa for the child to vacation to Disney in the United States. Despite their separation, Hudson Aredes was exercising his rights of custody at the time of removal. See Whallon v. Lynn, 230 F.3d 450, 459 (1st Cir. 2000) (finding an exercise of custody rights although the parents separated within six months of the child's birth).

For these reasons, the court finds that Hudson Aredes has demonstrated by a preponderance of the evidence that the removal of the child from Brazil to the United States was wrongful under the Convention.

## V. Affirmative Defenses

Having found that Hudson Aredes has satisfied his burden establishing a wrongful removal of the child, and in light of Gessica Aredes's status as a pro se litigant, the court considers whether Gessica Aredes's testimony and proffered evidence support the Convention's listed affirmative defenses. Specifically, the court examines whether Gessica Aredes has established by clear and convincing evidence that there exists a grave risk that returning the child would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. Convention art. 13b; 42 U.S.C. § 11603(e)(2)(A). "Exceptions to the general rule of expedient return, including Article 13(b), are to be construed narrowly." Danaipour v. McLarey, 286 F.3d 1, 14 (1st Cir. 2002). Thus, Article 13(b) requires a showing beyond a "serious risk." Id.; see Hague International Child Abduction Convention: Text and Legal Analysis, 51 Fed.Reg. at 10,510.

### A. Risk of Physical Harm to the Child

Gessica Aredes offered credible testimony that Hudson Aredes would occasionally discipline the child by hitting her on her legs when she was playing with him. Hudson Aredes denied physically assaulting or disciplining the child. The court credits Gessica Aredes's account that there was physical discipline, but concludes that this evidence does not support a "grave risk of physical harm" where Gessica Aredes and others who witnessed the discipline did not take any actions to stop or report it, and where the child, by these same accounts, continued to engage in the same play on subsequent occasions.

Gessica Aredes and her family members also offered credible testimony that, in the past, Hudson Aredes has driven the child in his car while intoxicated. Gessica Aredes has not established, however, that Hudson Aredes cannot be prevented from driving the child after drinking alcohol, either by his agreement or by court order.

The court also credits Marlene Pereira's testimony that the child could reside with her and would be physically safe there. In sum, the court finds that Gessica Aredes has not established a grave danger of physical harm if the child is returned to Brazil, where the child can reside with Gessica Aredes's mother while Brazilian courts address the custody dispute.

### B. Risk of Psychological Harm to the Child

The risk of psychological harm to the child were she to be returned to Brazil presents a more difficult question.

The court finds considerable evidence of Gessica Aredes's own distress. First, the judgment of a Brazilian court on Gessica Aredes's petition to the Conselheiro Pena Judicial District in Brazil seeking an emergency protective order, placed into evidence by the Hudson Aredes, offers some support for Gessica Aredes's fears. See Brazilian Emergency Protection Order [Doc. No. 1-8]. Although the petition was ultimately denied without prejudice because Gessica Aredes had left Brazil, the justice of that court found "in the case records that [Gessica Aparecida Pereira Aredes] had been the victim of psychological violence, materialized in the practice of threat and illegal constraint, with the intention of convincing her to give up the custody of the couple's daughter in favor of the paternal family." Id. at 3. The justice also acknowledged that local police failed to comply with instructions to question the Hudson Aredes, his family, and potential witnesses. See id. at 2 (holding that "the police authority overlooked the necessity to inquire the aggressors, the witnesses, as well as to conduct the adequate qualification

11

of the parties, although he/she has been duly made aware of the complementary diligences he/she should perform.").

Second, the court considers Gessica Aredes's testimony as to the alleged domestic violence perpetrated against Gessica Aredes by Hudson Aredes. In her sworn testimony to the court, Gessica Aredes testified that Hudson Aredes perpetrated acts of domestic violence against her, including stalking her when she attempted to get a divorce. Gessica Aredes alleged that Hudson Aredes would drink alcohol and become aggressive. Gessica Aredes states that she was afraid to return to Brazil.

Finally, the court finds Gessica Aredes's decision to make the dangerous journey across the Mexican desert to the United States with her daughter to seek asylum demonstrates her considerable desperation about her circumstances.

The question raised, however, is whether Hudson Aredes's actions toward Gessica Aredes are sufficient to establish a grave risk of psychological harm to the child if she is returned to Brazil. See Walsh v. Walsh, 221 F.3d 204, 220 (1st Cir. 2000) (incorporating a finding of domestic violence against the mother in an assessment of grave risk because "both state and federal law have recognized that children are at increased risk of physical and psychological injury themselves when they are in contact with a spousal abuser"); see also Danaipour v. McLarey, 286 F.3d 1, 17 (1st Cir. 2002) (holding that a diagnosis of PTSD by the subject child "could be evidence tending to support a finding of grave risk under Article 13(b).")

Gessica Aredes testified that the child had voiced potential suicidal ideation related to being separated from Gessica Aredes and returned to Brazil.[4] The court is unable to determine, however, that the child's fears are specifically related to a return to Brazil, rather than to a potential separation from her mother (which could be ameliorated if the mother returns with the child to Brazil). And again, the court also credits Marlene Pereira's testimony that Gessica Aredes could reside with her and would be physically safe there.

In sum, while the court generally credits Gessica Aredes's testimony, Gessica Aredes has not demonstrated by clear and convincing evidence that there is a grave risk to the child if she is returned to Brazil.

## I.   Conclusion

Based on the evidentiary record before the court, Hudson Aredes has met his burden to show that the removal of the child from Brazil to the United States was wrongful under the Convention, and Gessica Aredes has failed to demonstrate by clear and convincing evidence that there is a grave risk to the child if she is returned to Brazil.

The court will address the next steps regarding the return of the child to Brazil at the scheduled status conference.

IT IS SO ORDERED.

June 22, 2022                                           /s/ Indira Talwani
                                                        United States District Judge

---

[4] Gessica Aredes testified that the child stated that she wanted to stab herself, her mother and her grandfather so that they could be together and no one could harm them. Out of concern, Gessica Aredes took the child to a psychologist in Massachusetts.